UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/30/2020
```

KLAUBER BROTHERS, INC.,

                        Plaintiff,

          -against-

QVC, INC., QUARATE RETAIL GROUP, INC.,
XCEL BRANDS, LAI APPAREL DESIGN, INC.,
and DOES 1-10

                        Defendants.

1:19-cv-09321

OPINION AND ORDER
GRANTING MOTION
TO DISMISS

MARY KAY VYSKOCIL, United States District Judge:

        Before the Court is Defendants' Motion to Dismiss (the "Motion") Plaintiff's First

Amended Complaint (the "FAC") on the grounds that Plaintiff has failed to state a claim of

copyright infringement against Defendants.  For the reasons stated herein, Defendants' Motion is

GRANTED.

## **BACKGROUND**

        The facts as stated herein are drawn from Plaintiff's FAC and are assumed to be true for

the purposes of the Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

        This is a copyright case asserting that Defendants manufactured, caused to be

manufactured, and sold fabric and garments that infringe on certain copyrights owned by

Plaintiff.  *See, e.g.*, FAC ¶¶ 16, 24, 32.  The FAC includes infringement allegations concerning

seven different designs that largely can be described as lace patterns for use on or incorporation

into clothing.  *See, e.g.*, FAC ¶¶ 17, 25, 68-75.  Plaintiff alleges that each of the designs is

covered by a Certificate of Registration issued by the United States Copyright Office, FAC ¶¶ 13,

21, 29, 37, 45, 53, 61, and a copy of each relevant certificate is attached as an exhibit to the FAC.

*See* FAC Exs. A-G.  The FAC describes each design and includes photographs comparing each

one to the allegedly infringing products manufactured or sold by Defendants.  FAC ¶¶ 17, 25, 33,
41, 49, 57, 65.  Plaintiff also includes diagrams in the FAC which purport to identify each
infringing element of Defendants' products against Plaintiff's protected designs.  FAC ¶¶ 18, 26,
34, 42, 50, 58, 66.

Plaintiff alleges both direct infringement by Defendants and secondary liability—
contributory and vicarious—by suppliers and manufacturers over whom Defendants purportedly
had some form of control.  FAC ¶¶ 68-82.  In support of its direct infringement allegations,
Plaintiff further alleges that Defendants and their agents had access to the copyrighted designs in
Plaintiff's showroom, upon receipt of legally and illegally distributed samples or copies of the
designs, and through garments manufactured with "lawfully printed" versions of the designs.
FAC ¶ 69.  Plaintiff, however, does not specify any particular sample or "lawfully printed"
version that it believes Defendants possessed.   Finally, in support of its contributory and
vicarious liability claims, Plaintiff alleges that certain Defendants (QVC and Quarate) "had
written agreements with [Defendants] Xcel and Lai such that each Defendant had oversight and
control over the sourcing of laces affixed to the Infringing Products" and "had the right and
ability to supervise the infringing conduct" in which they had "a direct financial interest."  FAC
¶¶ 78-79.  Plaintiff does not allege the existence of specific contracts or agreements, or any
instances of Defendants asserting specific control with respect to the designs at issue in this case.

This case was initiated by the filing of Plaintiff's original complaint [ECF No. 1] on
October 8, 2019.  After Defendants' filed a motion to dismiss the original complaint [ECF No.
21], Plaintiff amended its complaint.  The First Amended Complaint [ECF No. 26] (the "FAC")
is the operative complaint in this action.  After the FAC was filed, Defendants once again filed a
motion to dismiss [ECF No. 27] accompanied by a memorandum of law in support [ECF No. 28]

2

("Def. Br."). Plaintiff opposes the Motion [ECF No. 34] ("Pl. Opp."). Defendants then submitted a reply [ECF No. 42] ("Def. Reply"). After the Motion was submitted, this case was reassigned to me.

Defendants' Motion raises four arguments. *First*, Defendants submit that Plaintiff has not demonstrated the existence of a valid copyright. *See* Def. Br. 9-11. *Second*, Defendant argues that Plaintiff fails to state a copyright infringement claim because the allegedly infringing works are not "substantially similar" to the Plaintiff's protected works and because Plaintiff has not alleged knowledge of the Plaintiff's designs. *See* Def. Br. at 9-22. *Third*, Defendant asserts that Plaintiff has failed to plead facts sufficient to establish secondary vicarious or contributory liability. *See* Def. Br. at 22-25. *Finally*, Defendants make the cursory argument that Plaintiff also has failed to allege willful infringement. *See* Def. Br. at 25.[1]

## LEGAL STANDARDS

To survive a motion to dismiss under Rule 12(b)(6) for failure to state a claim on which relief may be granted, a plaintiff only needs to allege "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must "'accept[] all of the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's favor.'" *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78-79 (2d Cir. 2018)). However, the Court is "'not bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions.'" *Id.* (quoting *In re Facebook Initial Public Offering Derivative Litig.*, 797 F.3d 148, 159 (2d Cir. 2015)).

---

[1] The Court does not address willful infringement at this time. Plaintiff has made several allegations regarding willful infringement, all seemingly conclusory. *See* FAC ¶¶ 75, 82. Defendants assert that, without specific facts, the allegations regarding willful infringement must be dismissed. *See* Def. Br. at 25. However, because willful infringement primarily is a damages issue, the Court reserves ruling at this time.

A plaintiff may not assert a claim of copyright infringement until a copyright "registration . . . has been made." 17 U.S.C. § 411(a). This means, that a Plaintiff must be able to prove at the outset of a case that the "Register [of Copyrights] has registered a copyright after examining a properly filed application." *Fourth Estate Public Benefit Corp. v. Wall-Street.com, LLC*, __ U.S. __, 139 S. Ct. 881, 892 (2019). "A certificate of copyright registration is prima facie evidence of ownership of a valid copyright" that may then be rebutted by an alleged infringer. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).

Assuming a valid copyright, to prove copyright infringement, a Plaintiff must show that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010). Rather than proving direct copying of a work, plaintiffs may also establish copying circumstantially by demonstrating that the Defendant had access to the copyrighted work at the time of the alleged infringement. *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).

Federal Rule of Civil Procedure 8 requires that the allegedly infringing acts be described with some specificity. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 36, n.3 (S.D.N.Y. 1992), *aff'd*, 23 F.3d 398 (2d Cir.1994), *cert. denied*, 513 U.S. 950 (1994). To do so, courts require a Plaintiff to allege "(1) which specific original works are the subject of the copyright claim, (2) that plaintiff owns the copyrights in those works, (3) that the copyrights have been registered in accordance with the statute, and (4) by what acts and during what time the defendant infringed the copyright." *See, e.g.*, *Energy Intelligence Grp., Inc. v. Jefferies, LLC*, 101 F. Supp. 3d 332, 338 (S.D.N.Y. 2015).

The gravamen of a copyright infringement claim is a plaintiff's allegation that a defendant's work or product is "substantially similar" to his or her own protected work.  *See Peter F. Gaito Architecture*, 602 F.3d at 63.  To determine substantial similarity, courts ask "whether an 'ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard [the] aesthetic appeal as the same.'"  *Id.* at 66. (quoting *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 111 (2d Cir. 2001)).  In other words, the question becomes "whether 'an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.'"  *Id.* (quoting *Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996, 1002 (2d Cir. 1995)).  However, if the protected work in question includes "both protectible and unprotectible elements," courts may apply a "more discerning" standard that requires the court to "'extract the unprotectible elements from [its] consideration and [to] ask whether the protectible elements, standing alone, are substantially similar.'"  *Id.* (quoting *Knitwaves, Inc.*, 71 F.3d at 1002).  In no event, however, must the court "dissect [the works] into their separate components, and compare only those elements which are in themselves copyrightable."  *Id.* (internal citations omitted).  Instead, the Court "'compar[es] the contested design's "total concept and overall feel" with that of the allegedly infringed work,' as instructed by '[its] good eyes and common sense.'"  *Id.* (first quoting *Tufenkian Import/Export Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 133 (2d Cir. 2003), then quoting *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 102 (2d Cir. 1999)).  A court may evaluate a defendant's claim that works are not substantially similar on a motion to dismiss.  *See id.* at 65.

Finally, a Defendant may also be liable under a theory of "contributory" or "vicarious" copyright infringement.  These are separate claims.  To prove a "contributory" copyright infringement claim, a plaintiff needs to allege that a defendant "(1) had actual or constructive

knowledge of the infringing activity, and (2) encouraged or assisted others' infringement, or provided machinery or goods that facilitated infringement." *Arista Records LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 432 (S.D.N.Y. 2011); *accord A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know of direct infringement."). "A defendant is liable for vicarious copyright infringement if it 'profit[s] from direct infringement while declining to exercise a right to stop or limit it.'" *Arista Records LLC*, 784 F. Supp. 2d at 434 (quoting *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 930 (2005)) (second alteration in original).  In other words, "[t]o establish liability, a plaintiff must show that the defendant '[1] had the right and ability to supervise the infringing activity and . . . [2] has a direct financial interest in such activities." *Id.* (quoting *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc*., 443 F.2d 1159, 1162 (2d Cir. 1971)) (second and third alteration in original).  However, in the case of either contributory or vicarious liability for copyright infringement, there must be primary infringement by either a Defendant in this case or by some third party.  *Faulkner v. Nat'l Geographic Enters. Inc.*, 409 F.3d 26, 40 (2d Cir. 2005) (citing *Matthew Bender & Co. v. West Publ'g Co.*, 158 F.2d 693, 706 (2d Cir. 1998)).

## ANALYSIS

### A.    Existence of a Valid Copyright

The Court begins, where Defendants do, with the existence of copyrights for Plaintiff's designs.  Defendants submit that Plaintiff cannot demonstrate ownership of a valid copyright solely by including a copyright registration certificate and stating that the certificate pertains to the design at issue.  *See* Def. Br. at 10.  Instead, Defendants propose that Plaintiff must submit the "deposit" associated with the certificate in order to establish the link.  *Id.*

6

This assertion is incorrect.  The law is clear that "[a] certificate of copyright registration is prima facie evidence of ownership of a valid copyright."  *Scholz Design, Inc.*, 691 F.3d at 186. Upon that showing, it falls to Defendants to rebut that presumption.  *Id.*  At some later stage of the case, Plaintiff may be required specifically to prove that they possess copyrights on the designs in question.  However, at the pleading stage, inclusion of copyright certificates along with an assertion that they pertain to the designs in question, is sufficient.  *Id.*  Plaintiff has included both here.  *See* FAC ¶¶ 13, 21, 29, 37, 45, 53, 61, Exs. A-G.

## B.     Substantial Similarity

The bulk of Defendants' motion is devoted to explaining why their designs are not substantially similar to Plaintiff's copyrighted works.  *See* Def. Br. at 11-22.  The Court will examine each of the seven allegedly infringed-upon works individually, and for each, has included an exemplar picture, chosen from those included in Plaintiff's FAC, as illustrations of the designs at issue.

As an initial matter, the Court declines Defendants' invitation, *see, e.g.*, Def. Reply at 4, to apply the "more discerning" standard for copyright infringement claims.  The Second Circuit has limited the "more discerning" analysis only to cases in which some elements of the work have been copied from the public domain.  *See Klauber Bros., Inc. v. Russell-Newman, Inc.*, 2013 WL 1245456, at \*7 (S.D.N.Y. Mar. 26, 2013) (examining the "more discerning" test), *aff'd sub nom. Klauber Bros., Inc. v. Bon-Ton Stores, Inc.*, 557 Fed. App'x 77 (2d Cir. 2014).  Because none of the elements Defendants point to with regard to the designs—flowers, colors, swirls, etc.—are from the public domain, the "ordinary observer" test is the governing standard here.  In applying this test, the Court must analyze the designs by considering whether an observer would "overlook" differences and "regard [the] aesthetic appeal as the same."  *Peter F. Gaito*

*Architecture*, 602 F.3d at 63; *see also Krisko v. Marvel Entm't, LLC*, __ F. Supp. 3d __, 2020 WL

4194940, at *8 (S.D.N.Y. 2020) (In determining whether two works are 'substantially similar,'

the Second Circuit requires that courts 'apply the "ordinary observer" test and ask whether the

ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them,

and regard their aesthetic appeal as the same.' (quoting *Zalewski v. Cicero Builder Dev., Inc.*, 754

F.3d 95, 102 (2d Cir. 2014))).

### 1. Design 3931/Design 9101 ("Design A")

<table>
<tr><td>Plaintiff's Design</td><td>Example of Defendant's Product</td></tr>
</table>



Defendants argue that Plaintiff's infringement claim as to Design A must be dismissed, as

the design is not substantially similar to the allegedly infringing works.  *See* Def. Br. at 12-13.

The Court disagrees.

In the FAC, Plaintiff suggests that Design A and Defendants' infringing products—

several designs and products from the "Isaac Mizrahi Live!" brand—possess "identical floral

shape with [the] same number of leaves and petals" and "identical shape[s] with identical

elements in [the] exact same arrangement, including curvature and connective stitching."  FAC

¶ 17.  Defendants contest that characterization, arguing that "Plaintiff's pattern depicts a bold

two-dimensional industrial design with alternating dense patches," whereas "Defendants' pattern

features a translucent and airy three-dimensional design with delicate ornamentation." Def. Br. at 12.

In the Court's view, any minor differences in the shading or texture of Defendants' designs, as compared to Plaintiff's works, is not sufficient to change the overall feel of the work. Indeed, Plaintiff's design and Defendants' products both include practically identical floral patterns with similar designs, interconnectedness, and overall appearance. The Court concludes that an ordinary observer could view the two designs as identical and with the same aesthetic appeal. As a result, on the current record, the Court finds that Defendants' allegedly infringing works are substantially similar to Plaintiff's protected Design A.

### 2. Design 608 ("Design B")

| Plaintiff's Design | Example of Defendant's Product |
|---|---|

 

The Court agrees with Defendants, *see* Def. Br. at 13-14, that the allegedly infringing works are not substantially similar to Plaintiff's protected Design B.

The FAC points to several allegedly infringing products and attempts to draw several similarities between them and Design B, including that the works possess, among other similarities, "[the] [e]xact same appearance of ancillary floral motifs in [the] center," "identical

whiskering," and "3 identical mounds" and "2 identically shaped supporting stems."  FAC ¶¶ 25-26.

An ordinary observer clearly would detect a difference between Design B and the example infringing products—garments marketed under the "Isaac Mizrahi Live!" brand. Plaintiff's repeating five round "floral" figures are noticeably less opaque than Defendants' designs.  Indeed, Defendants characterize the designs as depicting two entirely separate images, a peacock in Plaintiff's design and "flooded ovals" in Defendants' work.  *See* Def. Br. at 13.  The "train track" patterns across Plaintiff's design are entirely absent from Defendants' works, along with the "supporting stems" which are also not present in the Defendants' products.  These differences are enough to convince the Court that Plaintiff's design is not substantially similar to Defendants' products and that the claim related to Design B fails as a matter of law.

### 3. *Design 410 ("Design C")*

| Plaintiff's Design | Example of Defendant's Product |
|---|---|




The Court also agrees that Defendants' allegedly infringing work, another garment in the "Isaac Mizrahi Live!" brand, is not substantially similar to Plaintiff's protected Design C. *See* Def. Br. at 14-15.

In support of its allegations, Plaintiff points to "similar botanical elements with identical filling and connective stitching" and "identical flower[s] with the exact same number and shape of petals" when comparing Design C to the Defendants' product. The Court, however, agrees with Defendants, that differences in the works overcome any similarity, and would lead an ordinary observer to regard the designs as different.

To start, Defendants' product presents as a gossamer, three-dimensional work, while Plaintiff's design is a harsher, two-dimensional piece with much thicker lines and design elements. Defendants correctly point out that Plaintiff's work resembles "a gothic fish net stocking pattern" that is not reflected in Defendants' work. Def. Br. at 14. Like other designs at

issue in this case, Plaintiff's Design C also incorporates "whiskering" at the bottom of the work, while Defendants' product has none. This is especially notable since Plaintiff has pointed to that element as integral to other designs at issue, but ignores that element with regard to this design. *See, e.g.*, *supra* at 9-10. Defendants also point out specific differences in the number of leaves and petals in the works' floral elements. Def. Br. at 14. While the Court does not solely rely on that observation, it strengthens the conclusion that Design C and the allegedly infringing product are not substantially similar. As a result, Plaintiff's claim related to Design C fails as a matter of law.

### 4. *Design 39111 X ("Design D")*

Plaintiff's Design                         Example of Defendant's Product

 

At the pleading stage, the Court agrees with Plaintiff that the identified products marketed and sold by Defendants under the "Isaac Mizrahi Live!" brand are substantially similar to Plaintiff's protected Design D.

In the FAC, Plaintiff identifies several similarities related to the floral elements that dominate the two designs, including "[i]dentical flowers in identical arrangement[s] with [the] same spatial array, petal shape, number of petals, and filling." FAC ¶ 42. Just as they did with Design A, which the Court finds to be substantially similar at this stage, Defendants attempt to

distinguish the designs with identical language: "Plaintiff's pattern depicts a bold two-dimensional industrial design with alternating dense patches; whereas Defendants' pattern features a translucent and airy three-dimensional design with delicate ornamentation."  Def. Br. at 15.  Defendants also attempt to cast their design as reminiscent of a "bouquet," while characterizing Plaintiff's work as resembling "distinct" flowers.  *Id.*

The Court disagrees.  Defendants' product includes a floral pattern that practically is identical to the Plaintiff's work.  While Plaintiff's individual flowers may be slightly further apart, the overall feel of the designs is similar.  An ordinary observer viewing the designs would struggle to differentiate them and would likely understand them to be aesthetically similar.  As a result, Plaintiff's claim related to Design D survives.

### 5. *Design 3886 ("Design E")*

<u>Plaintiff's Design</u>                    <u>Example of Defendant's Product</u>




The Court finds that Defendants' products are not substantially similar to Plaintiff's protected Design E.

In the FAC, Plaintiff points to several alleged similarities between its copyrighted design and two garments Defendants manufacture and sell under the "Isaac Mizrahi Live!" brand.  FAC

¶ 50.  Among them, Plaintiff notes an "identical *fleur de lis*" shape with identical shading and filling," an "identical central floral element," and an "identical floral border."  *Id.*  The Court agrees with Defendant, however, that the most prominent element of Defendants' work, the shape of the lace design in a triangle to align with the fabric of the garment, is not similar to any element of Plaintiff's design.  *See* Def. Br. at 15-16.  That factor alone gives the designs markedly different structures and appearances, preventing them from being substantially similar.

Even if the Court looks more closely, the design elements of the works remain distinct. In contrast with the Court's findings regarding Design C, Plaintiff's Design E is airy and light, while Defendants' work is substantially darker and more solid.  In whole, Defendants work has far more contrast for its floral design elements than Plaintiff's design, which alters the overall feel of the work.  This is especially true when one looks at the flowers along the bottom edge of each design.  While a viewer may have trouble differentiating the flower from the other elements along the bottom border of Plaintiff's design, Defendants' work separates each flower from the other detail.  As a result, Plaintiff's claim related to Design E fails as a matter of law.

6.  *Design 845 ("Design F")*

Plaintiff's Design                    Example of Defendant's Product




The Court finds that Design F Defendants' product, a single garment from the "Joan Rivers" brand, is not substantially similar to Plaintiff's Design F.

As it does with other challenged designs, Plaintiff points to "identical flowers," "identical supporting leaf elements," and an "identical border" to argue that Design F is similar to Defendants' product.   However, these elements and others are markedly different.  To begin, Defendants' work is noticeably darker overall than Plaintiff's, leading to less distinction between design elements.  Plaintiff's design, by contrast, successfully highlights each individual item (flower, leaf, etc.) in the design.

The distinctions go beyond this level.  Several of the elements Plaintiff identifies as similar are actually different from Defendants' work.  While Plaintiff's design includes a five-petal "floral shape," Defendant's work has only four petals on the allegedly identical flower.  The "supporting leaf elements" in each design, as Plaintiff describes them, are differently shaded in the works, with Plaintiff's appearing to add a more translucent shading on the upper side of the leaf.  Finally, the whiskering on Plaintiff's design is shorter, giving the appearance of air, while

Defendants' whiskering is longer, allowing the whiskers to tangle, and complicating the design. In short, Defendants' product is not substantially similar to Plaintiff's Design F, and therefore Plaintiff's claim related to Design F fails as a matter of law.

### 7. *Design 615 ("Design G")*

| Plaintiff's Design | Example of Defendant's Product |
|:---:|:---:|
|  |  |

Finally, the Court agrees with Defendants, that the allegedly infringing product manufactured and sold by Defendants, a garment marketed under the "Linea by Louis Dell'Olio" brand, is not substantially similar to Plaintiff's protected Design G.

Plaintiff identifies "identical placements" of floral elements, paisley shapes, and whiskering as the similarities between the designs. FAC ¶ 66. However, Plaintiff's assertion of specific similarities ignores that the designs "feel" different. Defendants' work feels cluttered and is opaque as compared to Plaintiff's brighter and more distinguishable design elements. Additionally, several of the elements to which Plaintiff points are noticeably different. For example, the paisley elements on Defendants' design are oriented in different directions as compared to Plaintiff's Design G. They are also thinner and solid, while Plaintiff's include a ladder-like detail. Defendants' floral element presents as a light flower with heavy emphasis on the leaves beneath it, while Plaintiff's design does not appear to contain a flower at all, but

16

instead has a fern-like element.  The designs, therefore, are distinct and an ordinary observer would not regard the aesthetic appeal as the same between them.  Plaintiff's claim related to Design G fails as a matter of law.

**C.      Knowledge of Plaintiff's Designs**

In order to state a valid copyright claim, in addition to pleading substantial similarity of design, Plaintiff must show either direct copying or knowledge of Plaintiff's design or access to that design.  With respect to Designs A and D, while Plaintiff has pleaded substantial similarity, Plaintiff has failed to adequately allege that Defendants directly copied or had knowledge or access to Designs A and D.  As explained further below, because Plaintiff states identical boilerplate allegations of knowledge and access as to each design at issue, this claim element serves as a separate ground on which to grant the Motion as to all Designs.

In a copyright infringement case, Plaintiff must either allege actual copying of the protected works or allege facts sufficient to allow an inference that Defendants had access to the designs in order to copy them.  *See Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 51 (2d Cir. 2003).  As with many copyright cases, Plaintiff here has chosen to plead copying circumstantially, by alleging Defendants had access to its designs at the time the allegedly infringing products were designed, manufactured, and sold.   Plaintiff has failed adequately to allege access however, and, as a result, Plaintiff's direct infringement claims fail as a matter of law.

The FAC addresses access and knowledge details in two paragraphs.  First, beginning in Paragraph 14, and repeated verbatim six more times in the FAC, Plaintiff states that "[p]rior to the acts complained of herein, Plaintiff sampled and sold lace bearing Subject Design [XYZ] to numerous parties in the fashion and apparel industries, including garment manufacturers based in

17

New York and/or one or more of the Defendants." *See* FAC ¶¶ 14, 22, 30, 38, 46, 54, 62.  The

Court agrees with other courts that require a specific link between distributed samples or images

of a copyrighted design and the Defendants accused of infringing that design.  *See, e.g.*, *Boisson

v, Banian, Ltd.*, 273 F.3d 262, 270 (2d Cir. 2001); *Dress Barn, Inc. v. Klauber Bros., Inc.*, No. 18-

cv-8085 (DLC), 2019 WL 1949675, at *5 (S.D.N.Y. Apr. 22, 2019); *Polsby v. St. Martin's Press,

Inc.*, No. 97-cv-690 (MBM), 1999 WL 225536, at *3 (S.D.N.Y. Apr. 19, 1999) ("Plaintiff's

allegations fail to establish a connection, either direct or indirect, between any of the defendants

and plaintiff's [works].  Plaintiff does not allege that she sent her work directly to defendants, or

that she made it available to anyone even remotely connected with defendants. Instead, plaintiff

rests almost exclusively on the naked claim that she disseminated her work to 'numerous

persons' in and around Washington, D.C. in the years prior to publication").

In particular, Plaintiff's allegation does not provide any detail about how much of the lace

was sampled or sold, when it was sampled or sold, or, importantly, to whom it was sampled or

sold.  Without those details, the Court is unable to infer, to any degree of plausibility, whether

Defendants saw or could have seen the protected designs at or around the time its products were

made.  *Dress Barn*, a case which involved this Plaintiff asserting nearly identical claims, is

instructive.  There, the Court dismissed Klauber Brothers' infringement claims in their entirety,

in part because its allegation that 330,000 yards of lace with a particular design did not state

"where and when" the lace with the protected design had been distributed.  *Id.*  Moreover, in that

case, Judge Cote concluded that the Court was unable to determine even whether distributing

330,000 yards of lace was "wide dissemination" sufficient to impute knowledge, since Plaintiff

there pleaded no facts so demonstrating.  *Id.* (quoting *Boisson v, Banian, Ltd.*, 273 F.3d 262, 270

(2d Cir. 2001) (stating that "[a]ccess may be established directly or inferred from the fact that a

18

work was widely disseminated.")).  Plaintiff FAC here provides even fewer facts, and therefore

fails to overcome the same hurdles.

Plaintiff includes one additional paragraph regarding knowledge and access in the FAC,

stating without any specifics:

> Plaintiff is informed and believes and thereon alleges that Defendants, and each of
> them, had access to Subject Designs A, B, C, D, E, F, and G (collectively, the
> "Subject Designs") including, without limitation, through (a) access to Plaintiff's
> showroom and/or design library; (b) access to illegally distributed copies of the
> Subject Designs by third-party vendors and/or Doe Defendants, including without
> limitation international and/or overseas converters and printing mills; (c) access to
> Plaintiff's strike-offs and samples; and (d) garments manufactured and sold to the
> public bearing fabric lawfully printed with the Subject Designs by Plaintiff for its
> customers.

FAC ¶ 69.  This assertion is wholly inadequate since it fails to provide any actual facts to allow

the Court to infer that any Defendant had access to Plaintiff's designs.  *See Dress Barn, Inc.*,

2019 WL 1949675, at *5.  Plaintiff's obligation is to allege facts sufficient to support an

inference that *Defendants themselves* likely had access to Plaintiff's designs before

manufacturing and marketing the allegedly infringing products either because the design was

"widely disseminated" or because there is a reasonable possibility that the Defendant

individually viewed the prior work."  *Boisson*, 273 F.3d at 269.  Without some fact specific to

Defendants here, the FAC does not meet the demand of Federal Rule of Civil Procedure 8, which

requires that Defendants' infringing behavior be pleaded with some specificity.  *See Kelly*, 145

F.R.D. at 36, n.3.  As a result, Plaintiff's direct infringement allegations in its first cause of action

fail to state a claim as a matter of law.

**D.**     **Vicarious and Contributory Infringement Liability**

Plaintiff's second cause of action alleges both "vicarious" and "contributory" copyright

liability.  While ideally these claims would be alleged independently in separate causes of action,

there is no indication here that Defendant does not have adequate notice of the claims or that the

combined claim constitutes a "shotgun pleading" in violation of Federal Rule of Civil Procedure 8. Indeed, Rule 8 provides that "[a] party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). The Court will consider the contributory copyright liability claim and the vicarious liability claim separately.

Plaintiff's contributory liability claim fails as a matter of law. As noted above, to state a valid contributory infringement claim, a plaintiff needs to allege that a defendant "had actual or constructive knowledge of the infringing activity," among other requirements. *See Arista Records LLC*, 784 F. Supp. 2d at 432. As described in the previous section, Plaintiff has not established that any Defendant had knowledge of Plaintiff's designs, much less knowledge of any infringing activity by a third party. Plaintiff does not include any facts attempting to plead such knowledge. Therefore, the contributory infringement claim is dismissed.

To the extent Plaintiff pleads vicarious liability for infringement, that claim is not dependent on a showing of knowledge that the challenged designs infringed on Plaintiff's copyrights. To establish liability for vicarious copyright infringement, "a plaintiff must show that the defendant '(1) had the right and ability to supervise the infringing activity and (2) has a direct financial interest in such activities.'" *Id.* at 434-35 (quoting *Gershwin Publ'g Corp.*, 443 F.2d at 1162). However, "[v]icarious liability, unlike contributory liability, does not require the defendant to have actual knowledge of the infringement." *Michael Greco Prods., Inc. v. Valuewalk, LLC*, 345 F. Supp. 3d 482, 504 (S.D.N.Y. 2018) (citing *Gershwin Publ'g Corp.*, 443 F.2d at 1162). Instead, "[t]he legal standard for vicarious liability requires that [Defendant] had the *ability* to supervise or control the infringing activities." *Id.*

Plaintiff pleads in the FAC that:

> Defendants QVC or Quarate had written agreements with Xcel and Lai such that each Defendant had oversight and control over the sourcing of laces affixed to the Infringing Products. Plaintiff is further informed and believes and thereon alleges that one or more of the Defendants received samples of the Subject Designs from Plaintiff.

FAC ¶ 78.  Plaintiff also alleges that "Defendants derived profit in connection with such infringement through its sales of Infringing Products."  FAC ¶ 77.  While the facts pleaded in the FAC are somewhat skeletal, the allegations are sufficient to allow the Court to infer a financial incentive and control over manufacturing, especially since Plaintiff alleges that Defendants themselves were responsible for the sales of the allegedly infringing designs.  *See* FAC ¶¶ 16, 24, 32, 40, 48, 56, 64.

However, Plaintiff's vicarious liability claim nonetheless fails to state a plausible claim for relief since Plaintiff has failed to allege any primary infringement liability against Defendants or as to any third party.  A primary allegation of infringement is necessary to sustain a claim for a secondary violation.  *See Faulkner*, 409 F.3d at 40.  Here, the Court has already concluded that Plaintiff fails to assert a direct infringement by any of the named Defendants because it has not alleged access to or direct copying of its designs.  Moreover, the FAC includes no allegations about infringement by any other non-Defendant third parties that may serve as the primary violation for Plaintiff's secondary liability claims.  Because secondary liability requires an alleged primary violation, Plaintiff's vicarious liability claims also must be dismissed.

This conclusion is consistent with at least one other relatively recent case brought by this Plaintiff.  In *Klauber Bros., Inc. v. P.J. Salvage*, a court dismissed copyright infringement claims similar to those Plaintiff makes here.  No. 18-cv-5470, 2018 WL 6984817, at *6 (C.D. Cal. Oct. 30, 2018).  In the *P.J. Salvage* case, the court dismissed the direct infringement claims because, in part, Plaintiff insufficiently pleaded knowledge of or access to the infringed designs.  *Id.* at *4-

5.  Then, the Court also dismissed Plaintiff's vicarious and contributory liability claims because Plaintiff failed to plead a primary infringement by anyone, Defendant or third party.  *Id.* at *6. The same rationale requires dismissal here.

**E.**    **Leave to Amend**

In opposing the Motion, Plaintiff has requested leave to amend its complaint in the event that some or all of its claims are dismissed.  *See* Pl. Opp. at 13.  The Court denies that request. The operative complaint in this action is Plaintiff's FAC, which was already amended once in response to Defendants' first motion to dismiss [ECF No. 21].  That motion raised substantially the same arguments as the current Motion, and Plaintiff had a full opportunity to amend its complaint after it was given notice of the deficiencies alleged by Defendants.  As such, leave to amend a second time is denied.

## CONCLUSION

The Court concludes:

- Plaintiff has adequately alleged the existence of a valid copyright over each of the designs at issue in the case;

- Plaintiff has alleged substantially similarity with respect to Design A and Design D. As a matter of law, Defendants' products are not substantially similar to Plaintiff's other five designs;

- Plaintiff has failed to plead Defendants' knowledge of or access to its designs sufficient to sustain Plaintiffs' direct copyright infringement claims;

- Plaintiff has failed to plead knowledge sufficient to plausibly allege a contributory copyright infringement claim;

- Plaintiff's vicarious liability claim must be dismissed because Plaintiff has failed to allege a primary infringement violation.

Accordingly, Defendants' Motion to Dismiss Plaintiff's First Amended Complaint is

GRANTED.  The Clerk of Court respectfully is requested to close the motion at ECF No. 27 and

terminate the case.


**SO ORDERED.**


**Date:   November 30, 2020**
        **New York, NY**

_Mary Kay Vyskocil_
**MARY KAY VYSKOCIL**
**United States District Judge**

23